515 So.2d 263 (1987)
Peggy OPPERMAN, et al., Appellants,
v.
NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Appellee.
No. 86-1153.
District Court of Appeal of Florida, Fifth District.
October 1, 1987.
Rehearing Denied November 6, 1987.
*264 O. John Alpizar and Robert C. Gray, of Law Offices of O. John Alpizar, P.A., Palm Bay, for appellants.
S. Lindsey Holland, Jr., of Holland, Starling & Severs, P.A., Melbourne, for appellee.
ORFINGER, Judge.
The Oppermans timely appeal a final order dismissing Count II of their complaint against their insurer, Nationwide Mutual Fire Insurance Company (Nationwide). On appeal, the insureds argue that the trial court erred in holding that section 624.155, Florida Statutes (1985) does not permit a first party cause of action for bad faith. We agree and reverse.
In March of 1984, the Oppermans were injured in an automobile accident. At that time, Nationwide insured them on three policies with uninsured/underinsured motorist coverage totalling 75,000/150,000. The third party tort-feasor was underinsured and thus, the Oppermans sought relief under their UM policies, after settling with the tort-feasor for the policy limits of $15,000, with Nationwide's permission. The parties then engaged in extensive negotiation but failed to agree on the dollar amount to which the Oppermans were entitled. The Oppermans contend that Nationwide, although starting much lower, never offered more than $40,000 despite plaintiff's well-founded demand for policy limits. Accordingly, the matter was submitted to arbitration following which the arbitrators awarded the Oppermans $165,000 plus costs and arbiters fees.
When the arbitration proceedings were completed, the Oppermans filed a two count complaint against their insurer. Count I sought a confirmation of the arbitration award; Count II alleged an independent claim[1] for Nationwide's alleged bad faith in handling the Oppermans' UM claim, pursuant to section 624.155, Florida Statutes (1985).[2] Nationwide moved to dismiss Count II, arguing that Florida law does not recognize a cause of action for *265 bad faith by an insured against his own insurer (a first party action), and that the cited statute did not change existing law. From this order dismissing the claim, the Oppermans appeal.
In 1982, the Florida Legislature enacted section 624.155. At that time, it was already well established in Florida law that an insured could file a claim against his insurer for failing in good faith to settle a third party's claim, thus exposing him to liability in excess of his insurance coverage. See, e.g., Thompson v. Commercial Union Insurance Co. of New York, 250 So.2d 259 (Fla. 1971); Baxter v. Royal Indemnity Co., 285 So.2d 652 (Fla. 1st DCA 1973), cert. discharged with opinion, 317 So.2d 725 (Fla. 1975); American Fire and Casualty Co. v. Davis, 146 So.2d 615 (Fla. 1st DCA 1962). However, established Florida case law also held that an insured had no right to proceed against his own insurer for failing to settle in good faith the insured's own claim. The courts reasoned that in actions by third parties against the insured, the insurer must act in good faith in its effort to negotiate a settlement, and must not act to protect its own interest alone. Auto Mutual Indemnity Co. v. Shaw, 134 Fla. 815, 184 So. 852 (1938). This duty is breached where the insurer fails to settle a third party's claim in good faith and the third party is successful in obtaining a judgment against the insured for an amount exceeding the policy coverage. American Fire, supra. However, Florida courts consistently refused to recognize a "first party" bad faith cause of action by an insured against his insurer; i.e., a claim that the insurer had, in bad faith, refused to settle the insured's own claim. Unless the insured could allege an independent tort such as fraud or intentional infliction of mental distress, the only relief available on a first party claim was a cause of action for breach of contract. See Butchikas v. Travelers Indemnity Co., 343 So.2d 816 (Fla. 1976); Allstate Insurance Co. v. Kelley, 481 So.2d 989 (Fla. 5th DCA 1986); Smith v. Standard Guaranty Insurance Co., 435 So.2d 848 (Fla. 2d DCA 1983) (and cases cited therein); Industrial Fire & Casualty Insurance Co. v. Romer, 432 So.2d 66 (Fla. 4th DCA 1983).
The Oppermans argue that section 624.155(1)(b) has modified the common law regarding first party bad faith claims and that the principle espoused by the cited cases no longer applies. They suggest that the statute clearly creates a cause of action for "any person" who is injured as a result of an insurer's bad faith in settling a claim and that the language is clear and unambiguous. The question appears to be one which has not been directly addressed by a Florida court, although the statute was enacted in 1982.[3] However, two federal cases have examined the statute and have concluded that it does provide for a first party bad faith cause of action. See United Guaranty Residential Insurance Co. of Iowa v. Alliance Mortgage Co., 644 *266 F. Supp. 339 (Fla.M.D. 1986); Rowland v. Safeco Insurance Co. of America, 634 F. Supp. 613 (Fla.M.D. 1986). Although these decisions are not binding on this court, we find their reasoning persuasive.
In United Guaranty, the court applied the plain meaning doctrine of statutory construction.[4] In her well-reasoned opinion, Judge Black concluded that resort to rules of statutory construction was unnecessary because the plain language of section 624.155(1)(b) clearly expressed the legislative intent to extend a cause of action for bad faith to first and third parties alike.
Similarly, in Rowland, Judge Melton concluded that the legislature was aware of the distinction between first and third party bad faith claims when it enacted section 624.155, and had clearly expressed its intent to extend the cause of action to "any person" injured as a result of an insurer's bad faith in settling a claim. In doing so, the court noted the following staff report to the House Committee on Insurance:
[section 624.155] requires insurers to deal in good faith to settle claims. Current case law requires this standard in liability claims, but not in uninsured motorist coverage; the sanction is that the company is subject to a judgment in excess of policy limits. This section would apply to all insurance policies.
Staff Report, 1982 Insurance Code Sunset Revision (H.B. 4 F; as amended H.B. 10G) (June 3, 1982).
We agree that the plain meaning of section 624.155(1)(b) extends a cause of action to the first party insured against its insurer for bad faith refusal to settle. The language of section 624.155 is clear and unambiguous and conveys a clear and definite meaning. It provides a civil cause of action to "any person" who is injured as a result of an insurer's bad faith dealing. Thus, there is no occasion for resort to rules of statutory construction; the statute must be given its plain and obvious meaning. Holly v. Auld, 450 So.2d 217 (Fla. 1984). The legislature is presumed to know the existing law at the time it enacts a statute. Ford v. Wainwright, 451 So.2d 471, 475 (Fla. 1984); Adler-Built Industries, Inc. v. Metropolitan Dade County, 231 So.2d 197, 199 (Fla. 1970). There is nothing in the statute which indicates an intent to limit an existing common-law remedy. Cf., Bankston v. Brennan, 507 So.2d 1385 (Fla. 1987). On the contrary, the statute clearly indicates the intent to expand that remedy.
It is true that literal interpretation of the language of the statute need not be adopted when to do so would achieve a result that is unreasonable, or one that the legislature did not intend. Holly. However, a first party cause of action for bad faith has not been considered an unreasonable remedy by the states which have adopted it. In Gruenberg v. Aetna Insurance Co., 9 Cal.3d 566, 108 Cal. Rptr. 480, 510 P.2d 1032 (1973), the court held that the duty of an insurer to act in good faith in settling the claim of its insured was akin to the duty of the insurer to act in good faith in handling claims of third parties against the insured, and that
These are merely two different aspects of the same duty. That responsibility is not the requirement mandated by the terms of the policy itself  to defend, settle, or pay. It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities. Where in so doing, it fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of *267 good faith and fair dealing. [Emphasis in original].
108 Cal. Rptr. at 485, 510 P.2d at 1037. This legal duty is independent of any contractual obligation. See Egan v. Mutual of Omaha Insurance, 24 Cal.3d 809, 169 Cal. Rptr. 691, 620 P.2d 141 (1979), cert. denied, 445 U.S. 912, 100 S.Ct. 1271, 63 L.Ed.2d 597 (1980). Rather, the cause of action has been described as a "tortious breach of contract." See generally 16A Appleman, Insurance Law and Practice, § 8877.25 (1981). Following the lead of California, many states have adopted this theory of recovery by recognizing that an insurer owes to its insured an implied in law duty of good faith and fair dealing. Although not recognizing the tort because the legislature had enacted a statutory remedy for dealing with recalcitrant insurance companies, the court in Spencer v. Aetna Life & Casualty Insurance Co., 227 Kan. 914, 611 P.2d 149, 151-52 (1980) cites many cases from other jurisdictions which have recognized that such a duty exists in first party actions. In addition to the judicially created remedies, many states, like Florida, have adopted statutes, which provide for a civil action against an insurer for a bad faith refusal to pay policy benefits. For a discussion of some of these statutes, see 15A Couch on Insurance 2d § 58:2 (1983).
Having determined that the legislature, in enacting section 624.155, did provide a remedy to an insured whose claim has not been settled in good faith by his insurer, we look to the complaint to determine if such a cause of action has been properly alleged.
In Count II, the count for bad faith refusal to settle, the insured alleged, inter alia, that despite complete information on Nationwide's part of the seriousness of plaintiff's injuries and that the value of the claim far exceeded the remaining $60,000 in coverage, Nationwide first offered $22,500, contending that the failure of Mrs. Opperman to wear an available seatbelt contributed to her injuries; that Nationwide repeatedly refused to offer the policy limits "in the face of clear and convincing evidence that the value of plaintiff's case far exceeded" these limits; that plaintiff continuously offered to accept the policy limits, but that Nationwide never offered more than $40,000. The complaint further alleges that
[i]n spite of the knowledge of the Defendant that there was no issue of liability, no real issue of the Plaintiff's non-use of seat belts and no issue on whether the claim exceeded the threshold contained in the Florida No-Fault law, the Defendant repeatedly failed and/or refused to settle for available policy limits when they could have done so, had they wished to act fairly and honestly toward their insured.
Assuming the well pleaded facts to be true, as we must when reviewing a motion to dismiss, there were sufficient allegations of unreasonable and bad faith conduct on the part of the insurer. We are not persuaded by the insurer's argument that it had a contractual right under the policy to demand arbitration. The function of the bad faith claim is to provide the insured with an extra-contractual remedy. See 15A Couch on Insurance 2d, § 58:1, p. 248 (1983). It is based on an insurer's breach of its duty of good faith, which it owes to its insured. Thus, in spite of any contractual right to arbitrate, if the insurer demanded arbitration unreasonably and in bad faith, then it breached this duty. The California courts have permitted an insured to maintain a cause of action for bad faith even after arbitration. See Corral v. State Farm Mutual Automobile Insurance Co., 92 Cal. App.2d 1004, 155 Cal. Rptr. 342 (1979); Richardson v. Employers Liability Assurance Co., 25 Cal. App.3d 232, 102 Cal. Rptr. 547 (1972), disapproved on other grounds, Gruenberg v. Aetna Insurance Co., supra. See also Nichols v. State Farm Mutual Auto Insurance Co., 279 S.C. 336, 306 S.E.2d 616, 620 (1983) (in bad faith action, issue is not whether insurance company has a right to refuse to renew policy, but whether nonrenewal showed bad faith).
Count II stated a cause of action for bad faith refusal to settle, and should not have been dismissed. The order appealed from *268 is reversed, and the cause is remanded for further proceedings consistent herewith.
REVERSED and REMANDED.
UPCHURCH, C.J. and COWART, J., concur.
NOTES
[1] A final order which adjudicates a distinct and severable cause of action, not interrelated with the remaining claims pending in the trial court is appealable as a final order. Mendez v. West Flagler Family Association, 303 So.2d 1 (Fla. 1974).
[2] Any person may bring a civil action against an insurer when such person is damaged:
* * * * * *
(b) By commission of any of the following acts by the insurer:
1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his interests;
2. Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made; or
3. Except as to liability coverages, failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.
§ 624.155(1)(b), Fla. Stat. (1985).
[3] We note however that the statute has been discussed in dicta. In Industrial Fire & Casualty Insurance Co. v. Romer, supra, the court, after recognizing that Florida law did not permit a first party cause of action for bad faith, stated in a footnote: "But see Section 624.155(1)(b)(1), Florida Statutes (Supp. 1982) effective October 1, 1982." In his concurring opinion, Judge Hurley noted:

Although it need not be decided here, it is arguable that with the passage of this legislation [section 624.155], Florida has joined the ranks of those states which impose an implied covenant of good faith and fair dealing in insurance contracts. See, e.g., Gruenberg v. Aetna Insurance Co., 9 Cal.3d 566, 108 Cal. Rptr. 480, 510 P.2d 1032 (1973). If this is so, then proof of a breach of the covenant would permit recovery in tort in first party, as well as third party, insurance claims.
Romer, 432 So.2d at 69 n. 5 (Hurley, J., concurring). Also, In Schimmel v. The Aetna Casualty and Surety Co., 506 So.2d 1162 (Fla. 3d DCA 1987), the plaintiff initiated suit against its insurer for breach of contract after the insurer failed to pay a claim for personal property damages. After final judgment had been entered against the insurer for compensatory damages, attorney's fees and costs, and the judgment had been satisfied, the insured filed a second suit for bad faith based on section 624.155. The appellate court affirmed the dismissal of the action as violative of the rule against splitting causes of action. There is a strong inference in the opinion that the court would have upheld the action under section 624.155 had it been filed together with the original damage suit.
[4] Legislative intent controls the construction of statutes, and that intent is determined primarily from the language of the statutes. The plain meaning of the statutory language is the first consideration. St. Petersburg Bank & Trust Co. v. Hamm, 414 So.2d 1071 (Fla. 1982). When the language of a statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory construction; the statute must be given its plain and obvious meaning. Holly v. Auld, 450 So.2d 217 (Fla. 1984).