520 So.2d 73 (1988)
Lourdes VEGA and Cecilio Vega, Appellants,
v.
TRAVELERS INDEMNITY COMPANY, a Foreign Corporation, Appellee.
No. 86-3173.
District Court of Appeal of Florida, Third District.
February 9, 1988.
Rehearing Denied March 11, 1988.
Magill & Lewis, P.A., and R. Fred Lewis, Miami, for appellants.
*74 James O. Nelson, David L. Willing, and Steven Adamsky, Miami, for appellee.
Before HENDRY, NESBITT and JORGENSON, JJ.
JORGENSON, Judge.
Lourdes and Cecilio Vega brought an action to recover medical expenses, lost wages, and loss of earning capacity benefits from their insurance carrier, Travelers Indemnity Company, pursuant to no-fault coverage provided by their automobile insurance policy.[1] The jury found for Travelers and awarded no damages to the Vegas. The trial court entered final judgment upon the jury's verdict. The Vegas contend, and we agree, that the judgment was against the manifest weight of the evidence.
At trial, Travelers admitted that its policy was in full force and effect on May 28, 1983, the date Lourdes Vega was injured in a car crash. Travelers also admitted that she was an insured under the policy terms and that the policy included personal injury protection [PIP] coverage.[2] Uncontradicted evidence established that Travelers refused to reimburse her for two bills for services rendered at the hospital immediately following her accident. There was unrebutted testimony that Travelers refused to pay the required 80% of the charges submitted by the treating orthopedic surgeon as well as the charges for a second medical opinion from another orthopedic surgeon.[3] Uncontradicted evidence showed that Mrs. Vega missed two weeks of work following the accident and that Travelers refused to reimburse her for her lost wages. It was undisputed that, as a result of the accident, Mrs. Vega suffered a permanent partial disability. Her disability rating ranged from a low of 2.5%, according to Travelers' physician, to a high of *75 15%, according to Mrs. Vega's chiropractor. A vocational rehabilitation expert who testified for Mrs. Vega established that the present value of her loss of earning capacity over her remaining working life would be $37,513.
Travelers presented no testimony, expert or otherwise, in rebuttal. Instead, it advanced the proposition that, because Mrs. Vega had found a job working as a laundress at a higher wage than she had earned bagging groceries before the accident, Travelers was thereby absolved from liability under section 627.736, Florida Statutes (1985). Travelers offered no reasonable explanation for its refusal to pay 80% of Mrs. Vega's hospital and physician's bills. Even if Travelers was correct in its benighted belief that Mrs. Vega's increased wages justified its failure to pay her claim for loss of future earning capacity, it was absolutely bound to pay for concededly lost past wages. Travelers' adamant refusal to settle the outstanding medical bills and weeks of lost wages is at odds with its candid admission to the trial court that the issue in the case was whether, as a result of the accident, Mrs. Vega's earning capacity had been impaired.[4]
When construing provisions of the No-Fault Act, Florida courts incline to a liberal construction in favor of the insured. Palma v. State Farm Fire & Casualty Co., 489 So.2d 147 (Fla. 4th DCA), rev. denied, 496 So.2d 143 (Fla. 1986); Charter Oak Fire Ins. Co. v. Regalado, 339 So.2d 277 (Fla. 3d DCA 1976). While the credibility of an expert witness and the weight of his testimony are for the jury to determine, Fay v. Mincey, 454 So.2d 587 (Fla. 2d DCA 1984), the fact finder must be guided by the greater weight of the evidence. Although a jury may award a lower amount of damages than that suggested by expert testimony, it may not totally ignore the only evidence presented on that issue. County of Sarasota v. Burdette, 479 So.2d 763 (Fla. 2d DCA 1985), rev. denied, 488 So.2d 830 (Fla. 1986); Slacter v. City of St. Petersburg, 449 So.2d 1006 (Fla. 2d DCA), rev. denied, 458 So.2d 271 (Fla. 1984). A zero verdict in Florida will be upheld only in the face of conflicting evidence regarding whether the plaintiff was in fact injured. Westbrook v. All Points, Inc., 384 So.2d 973 (Fla. 3d DCA 1980). See also Doyle v. Faford, 517 So.2d 778 (Fla. 5th DCA 1988). Although her disability rating varied from physician to physician, the fact of Mrs. Vega's permanent partial disability was uncontroverted. The jury could not reasonably have returned a zero verdict. See Short v. Ehrler, 510 So.2d 1110 (Fla. 4th DCA 1987) (uncontroverted expert testimony warranted award of some damages); Valdez v. State Farm Mut. Auto. Ins. Co., 381 So.2d 743 (Fla. 3d DCA 1980); Banyas v. American Mut. Fire Ins. Co., 359 So.2d 506 (Fla. 1st DCA 1978). Based on both the evidence adduced at trial and the statutory provisions, Travelers must reimburse Mrs. Vega for the remaining hospital and physician charges and the two weeks of lost wages. Mrs. Vega is also due some compensation for loss of future earning capacity.
Because the jury verdict of zero damages was against the manifest weight of the evidence, we reverse the final judgment and remand for a new trial on damages.
Reversed and remanded with directions.
NOTES
[1] The Vegas' policy provides in pertinent part:

SECTION I
PERSONAL INJURY PROTECTION
The Company will pay, in accordance with the Florida Automobile Reparations Reform Act, as amended, to or for the benefit of the injured person:
(a) 80% of medical expenses, and
(b) 60% of work loss[.]
Definitions
When used in reference to this Section:
.....
"medical expenses" means reasonable expenses for necessary medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and rehabilitative services, for prosthetic devices and for necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person who relies upon spiritual means through prayer alone for healing in accordance with his religious beliefs[.]
.....
"work loss" means with respect to the period of disability of the injured person, any loss of income and the earning capacity from inability to work proximately caused by the injury sustained by the injured person[.]
[2] Personal injury protection benefits required under section 627.736, Florida Statutes (1985), include, in part,

REQUIRED BENEFITS.  Every insurance policy complying with the security requirements of s. 627.733 shall provide personal injury protection to the named insured, relatives residing in the same household, persons operating the insured motor vehicle, passengers in such motor vehicle, and other persons struck by such motor vehicle and suffering bodily injury while not an occupant of a self-propelled vehicle, subject to the provisions of subsection (2) and paragraph (4)(d), to a limit of $10,000 for loss sustained by any such person as a result of bodily injury, sickness, disease, or death arising out of the ownership, maintenance, or use of a motor vehicle as follows:
(a) Medical benefits.  Eighty percent of all reasonable expenses for necessary medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and necessary ambulance, hospital, and nursing services. Such benefits shall also include necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person who relies upon spiritual means through prayer alone for healing, in accordance with his religious beliefs.
(b) Disability benefits.  Sixty percent of any loss of gross income and loss of earning capacity per individual from inability to work proximately caused by the injury sustained by the injured person, plus all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for the injury, the injured person would have performed without income for the benefit of his household. All disability benefits under this provision shall be paid not less than every 2 weeks.
[3] The second orthopedic surgeon suggested that Mrs. Vega postpone arthroscopic knee surgery, an opinion which incidentally saved the carrier approximately $10,000.
[4] The legal duty of an insurer to act fairly and in good faith in settling its insured's claims is independent of any contractual obligation. Opperman v. Nationwide Mut. Fire Ins. Co., 515 So.2d 263 (Fla. 5th DCA 1987). It is clear on the record before us that Mrs. Vega could have brought an action under section 624.155(1)(b), Florida Statutes (1985), for wrongful infliction of emotional distress based on bad faith refusal to pay first-party benefits. See Fidelity & Casualty Ins. Co. v. Taylor, No. 86-3180 (Fla. 3d DCA Dec. 29, 1987); Dependable Life Ins. Co. v. Harris, 510 So.2d 985 (Fla. 5th DCA 1987); Dominguez v. Equitable Life Assurance Soc'y, 438 So.2d 58 (Fla. 3d DCA 1983), approved, 467 So.2d 281 (Fla. 1985); Comment, The Other Insurance Crisis: Bad Faith Refusal to Pay First-Party Benefits, 15 Fla.St.U.L.Rev. 521 (1987).