538 So.2d 491 (1989)
Daniel CARDENAS and Hilda Cardenas, Appellants/Appellees,
v.
MIAMI-DADE YELLOW CAB Company, Bruns & McKenna, Inc., a/k/a Burns & McKenna, Inc., Home of Yellow Cab Company, Inc., John Jurich, Yvon Jerome, and Liberty Mutual Insurance Company, Appellees/Appellants.
Nos. 86-612, 86-647, 86-774, 86-1036 and 86-1164.
District Court of Appeal of Florida, Third District.
January 31, 1989.
*492 Bernard Goldfarb, Lawrence & Daniels and Adam H. Lawrence, Miami, for appellants/appellees.
Magill & Lewis and R. Fred Lewis, Kubicki, Bradley, Draper, Gallagher & McGrane; Hoppe & Backmeyer, Miami, for appellees/appellants.
Before SCHWARTZ, C.J. and NESBITT and DANIEL S. PEARSON, JJ.
NESBITT, Judge.
Husband and wife Daniel and Hilda Cardenas were taxi passengers whose claims, based on injuries Daniel sustained when the taxi's wheel rolled over his foot, form the foundation of the series of appeals and cross-appeals consolidated in this suit. We address only those claims of the respective parties which we consider worthy of discussion.
At the conclusion of a family visit to Miami, Hilda Cardenas telephoned Yellow Cab (Miami-Dade Yellow Cab Company; Bruns and McKenna, Inc., a/k/a Burns and McKenna, Inc.; Home of Yellow Cab, Inc.; and Yellow Cab employees John Jurich and Yvon Jerome will be jointly referred to as "Yellow Cab") and requested two taxis to transport the Cardenas family from their condominium to the airport in order that they could take a flight to their home in Venezuela. A stroller, used by the family's son, who suffered from muscular dystrophy, was placed in the rear of one taxi. As the taxis exited the condominium property, the security guard noticed the stroller and mistook it for a pool chair belonging to the condominium. He contacted Yellow Cab's dispatcher, who ordered the cabs to return the chair to the condominium. The taxis stopped on the shoulder of the highway where the drivers established that it was a stroller, not a pool chair. Nonetheless, the drivers decided that they had to obey the dispatcher and return to the condominium security gate. The Cardenas family, including small children, accompanied them under protest rather than be left on the open highway. When the taxis arrived at the security gate, Daniel opened the door of the taxi in which he was riding to exit. As he did, the taxi wheel rolled over his foot, causing severe injury to his ankle and foot. Daniel was taken to the hospital while the rest of the family took other cabs *493 and made the scheduled flight to Venezuela. Daniel and Hilda Cardenas filed suit against Yellow Cab. At the conclusion of a jury trial, Yellow Cab was found guilty of false imprisonment, negligence and breach of contract of carriage.
As will be discussed below, we agree with Yellow Cab's claim that excessive damages for false imprisonment were awarded, and we reverse the judgment as it pertains to that issue with directions to award defendants a new trial. Additionally, we hold that it was error not to submit to the jury the issue of punitive damages on the part of certain defendants. However, as to all other issues raised, we affirm the judgment.

PART I

The Common Carrier's Appeal
We deal first with Yellow Cab's appeal. Various points are raised, all of which we find non-meritorious except for the claim that the damages awarded were excessive. We hold that the compensatory damage award for false imprisonment was excessive. Daniel Cardenas was awarded total net damages of $645,000, the sum requested by plaintiffs' attorney. On the verdict form, the jury indicated that it had apportioned the award forty percent ($258,000) for false imprisonment and sixty percent ($387,000) for negligence. The award was subsequently reduced to $529,000 after deducting the amount of Daniel's comparative negligence.
Concerning the false imprisonment damages, the amount awarded was clearly excessive in that the jury verdict was without a reasonable basis in the record. Bartholf v. Baker, 71 So.2d 480 (Fla. 1954); City of Miami v. Graham, 311 So.2d 697 (Fla. 3d DCA 1975), cert. denied, 330 So.2d 17 (Fla. 1976). The record demonstrates that the period of false imprisonment, i.e. the time between when the cab first stopped on the highway and when Daniel exited from it at the condominium, lasted approximately ten minutes. While the consequences of the plaintiffs' strongly protested return to the condominium were unfortunate and while the result was ascertainable physical and mental suffering on the part of Daniel, the excessive award of $258,000 in compensatory damages could only have been based on speculation, if not the sympathy, passion and prejudice, which the jury felt for the plaintiff and his family. See Lassitter v. International Union of Operating Eng'rs, 349 So.2d 622, 627 (Fla. 1976); Graham, 311 So.2d at 699; see also, Washington County Kennel Club, Inc. v. Edge, 216 So.2d 512, 516-17 (Fla. 1st DCA 1968), cert. dismissed, 225 So.2d 522 (Fla. 1969).
On the other hand, with respect to Daniel's claim of negligence for the compound fracture to his ankle and resulting injuries caused by the taxi running over his foot, the $387,000 award was not excessive. At trial, testimony established that as a consequence of the injury, Daniel was left with a six per cent permanent disability of the body and a twenty-five per cent impairment of the injured lower leg. He spent eighteen days in the hospital and his medical bills totalled $41,000 at the time of trial. As a result of the injury, he suffered complications in the healing of the skin covering the injured bones which required two skin grafts. It is probable that Daniel will have to undergo a future operation to remove poorly placed screws which were inserted in the ankle as support. He continues to have pain and limited mobility. There was evidence that an injury of this kind often results in traumatic arthritis in the ankle. In sum, based on the record before us, the negligence award of $387,000 was not excessive. See Erickson v. Liestner, 324 So.2d 208 (Fla. 3d DCA 1975); General Rent-A-Car, Inc. v. Dahlman, 310 So.2d 415 (Fla. 3d DCA 1975).
Accordingly, we affirm the verdict as to negligence damages, but we remand for a new trial on the amount of damages to which Daniel Cardenas is entitled for false imprisonment.

PART II

The Cardenas Appeal

A. Punitive Damages

The other appeal presented in this consolidated case is that of Daniel and Hilda *494 Cardenas. The Cardenases raise various issues by direct appeal and cross-appeal. We find only two merit discussion. The first is their claim that the trial judge erred in not submitting the issue of punitive damages to the jury. The second is the allegation of wrongful dismissal of their claim against the taxi cab company's insurer.
Preliminary to our discussion of punitive damages, we address defendants' claim that the issue was not before the court. While the third amended complaint upon which this case proceeded to trial did not contain a claim for punitive damages, the previous complaints did, and at trial, the judge stated that the parties were on notice of the claim based on the evidence presented at trial. Consequently, it is irrelevant to our discussion whether the trial judge struck the motion to amend the pleadings to add a punitive damage claim or whether he directed a verdict on the claim.
Punitive damages for false imprisonment are appropriate on a proper showing of malice. Detention is malicious if the act causing the wrongful restraint is without reasonable cause. Harris v. Lewis State Bank, 482 So.2d 1378 (Fla. 1st DCA 1986); 24 Fla.Jur.2d False Imprisonment and Malicious Prosecution § 11 (1981). However, in order to recover punitive damages, the defendant's moral turpitude or wanton and outrageous disregard of the plaintiff's rights must be shown. Id. In the case at hand, there was sufficient evidence presented on the issue of punitive damages to raise a jury question as to the personal liability of the individual defendants, taxi driver Yvon Jerome and dispatcher John Jurich. There was testimony that Yvon Jerome was present when the Cardenases' disabled son was removed from the stroller which was mistaken for the pool chair. There was evidence that after stopping on the side of the highway en route to the airport and verifying that the stroller was not, in fact, the property of the condominium complex, Jerome nevertheless insisted on returning to the complex. There was further evidence that dispatcher John Jurich insisted that the taxi and passengers return to the complex even after being informed of the mistake. The sum of this evidence created a question for the trier of fact as to whether these two defendants exercised excessive and reckless disregard of the plaintiff's rights. Accordingly, the question of whether to assess punitive damages against Jerome and Jurich should have been submitted to the jury. See Harris, 482 So.2d at 1385.
On the other hand, the trial judge was correct in not submitting to the jury the question of liability for punitive damages as to the corporate defendants. We hold, as a matter of law, that there did not exist the required independent fault on the part of the employer necessary to impose punitive damages under a theory of derivative or vicarious liability as required by Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981). Neither was dispatcher Jurich a manager for purposes of corporate liability. See Bankers Multiple Line Ins. Co. v. Farish, 464 So.2d 530, 533 (Fla. 1985).

B. The Bad Faith Claim Against the Insurer

Finally, we direct our attention to the Cardenases' allegation of a wrongful dismissal with prejudice of their supplemental amended complaint filed against Liberty Mutual Insurance Company, the liability carrier for the taxi cab company defendants. The complaint alleged that Liberty Mutual had breached its statutory duty under section 624.155(1)(a) and (b), Florida Statutes (1985), to settle in good faith the Cardenas claim.
The question we address is whether section 624.155 creates a cause of action in favor of third parties against liability insurers who fail to settle in good faith. The Cardenases argue that this section provides for a direct bad faith action by an injured third party against an alleged tort-feasor's insurer. They cite for support the relevant sections of the statute which state:
(1) Any person may bring a civil action against an insurer when such person is damaged:
(a) By a violation of any of the following provisions by the insurer:

*495 1. Section 626.9541(1)(i) ...;[1]
(b) By the commission of any of the following acts by the insurer:
1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his interests;
2. Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made; or
3. Except as to liability coverages, failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.
§ 624.155(1)(a) and (b), Fla. Stat. (1987) (emphasis added). We disagree with the plaintiffs' reading of the intent of the statute, and we hold that the statute creates no direct third-party cause of action.
Under established case law, an injured third party, as a judgment creditor, may maintain suit directly against a tort-feasor's liability insurer for recovery of any judgment in excess of the policy limits based on allegations of the insurer's bad faith or fraud in its handling of the suit. Thompson v. Commercial Union Ins. Co. of New York, 250 So.2d 259, 264 (Fla. 1971); see Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783 (Fla. 1980). The injured person's standing is based on his status, after obtaining a judgment, as third-party beneficiary of the contract between the insured tort-feasor and that person's liability insurer. Thompson, 250 So.2d 259.
Moreover, as clearly set out in Opperman v. Nationwide Mut. Fire Ins. Co., 515 So.2d 263 (Fla. 5th DCA 1987), review denied, 523 So.2d 578 (Fla. 1988) and cases cited therein, the insured also may file a bad faith cause of action against his insurer based on the insurer's breach of duty to the insured to attempt to settle a third party's claim. This right is based on the fact that such a breach exposes the insured to liability in excess of his insurance coverage should the third party be successful in obtaining a judgment against the insured.[2] However, prior to passage of section 624.155, an insured had no right to file suit against his insurer for the insurer's bad faith refusal to settle the insured's own claim. In such cases, the policy holder could seek relief only for breach of contract unless he could allege an independent tort such as fraud or intentional infliction of mental distress. See id. at 265 and cases cited therein.[3]
In 1982, section 624.155 was enacted. Courts have read the statute to change existing law by extending to a policy holder a cause of action against his insurer for bad faith refusal to settle the insured's first-party claims. Id.; Rowland v. Safeco of America Ins. Co., 634 F. Supp. 613 (M.D. Fla. 1986); see Vega v. Travelers Indem. Co., 520 So.2d 73 (Fla. 3d DCA), review *496 denied, 531 So.2d 169 (Fla. 1988); Fidelity and Casualty Co. of New York v. Taylor, 525 So.2d 908 (Fla. 3d DCA 1987), review denied, 528 So.2d 1181 (Fla. 1988). However, no court has read the statute to extend a direct cause of action to a third party. See Fidelity and Casualty Co. of New York v. Cope, 462 So.2d 459 (Fla. 1985).
In reaching our decision as to the scope of section 624.155, we are mindful that the legislature is presumed to have known the existing law at the time it enacted the statute at issue, Opperman, 515 So.2d at 266, Ford v. Wainwright, 451 So.2d 471, 475 (Fla. 1984); Adler-Built Indus., Inc. v. Metropolitan Dade County, 231 So.2d 197, 199 (Fla. 1970). Moreover, we have undertaken a careful reading of the instant statute and those other statutory sections referred to within section 624.155. There is repeated reference, not to the rights of third persons, but to the rights of the insured in his dealings with his insurance company. See Florida Jai Alai, Inc. v. Lake Howell Water & Reclamation Dist., 274 So.2d 522 (Fla. 1973). (Legislative intent should be determined from consideration of the statute as a whole.) See also 49 Fla.Jur.2d, Statutes § 115 (1984).
By the language used, the legislature clearly intended to impose a duty of good faith and fair dealing. Opperman, 515 So.2d 263; see Industrial Fire & Casualty Ins. Co. v. Romer, 432 So.2d 66, 69, n. 5 (Hurley, J. concurring) (Fla. 4th DCA), review denied, 441 So.2d 633 (Fla. 1983). However, the duty is one the parties to the contract owe to each other,[4] not to a third party who is not in privity of contract. In other words, an insurer owes no duty directly to a third-party claimant. The insured may assign his cause of action for breach of duty to settle to the injured third party, but that party has no independent cause of action against the insurer. See, Murphy v. Allstate Ins. Co., 17 Cal.3d 937, 132 Cal. Rptr. 424, 553 P.2d 584 (1976).[5] As the California Supreme Court pointed out in Murphy, "The insurer's duty to settle does not directly benefit the injured claimant. In fact, he usually benefits from the duty's breach. Instead of receiving an award near policy limits, he stands to obtain judgment exceeding policy coverage." 132 Cal. Rptr. at 426-27, 533 P.2d at 586-87.
Finally, assuming, arguendo, that the words "any person" are read in isolation from the rest of section 624.155, interpreting those words to include an injured third party would achieve an unreasonable result in that permitting a third party such a cause of action against the insurer any time the insurer allegedly failed to settle in good faith could result in "undesirable social and economic effects ... (i.e., multiple litigation, unwarranted bad faith claims, coercive settlements, excessive jury awards, and escalating insurance, legal and other `transaction' costs)." Moradi-Shalal v. Fireman's Fund Ins. Cos., 250 Cal. Rptr. at 123, 758 P.2d at 64-65. See generally id. for an informative discussion of the issue.
Based on the foregoing reasoning, we hold that the words "any person" as used in section 624.155 must be defined as any insured party who is harmed by his insurer's bad faith refusal to settle. In sum, the insurer's duty to settle runs to the insured and not to the injured party. Accordingly, it was not error to dismiss plaintiffs' suit against Liberty Mutual.
While we recognize the broadness of our decision on this issue, we have ventured one step beyond any narrower holding which might have disposed of this case in an effort to set forth in one opinion a complete analysis of the proper parties to a section 624.155 cause of action. Because of the effect of our holding, we certify this particular issue to the Supreme Court of *497 Florida as being one of great public importance.

CONCLUSION
In summary, we reverse and remand for a new trial as to damages for false imprisonment. At that trial, the issue of whether or not punitive damages should be assessed against defendants Jerome and Jurich should be submitted to the jury. In all other respects, the judgment is affirmed.
SCHWARTZ, Chief Judge (dissenting in part).
I disagree with the court only in its conclusion that the $387,000 award for the plaintiff's broken ankle  from which he recovered almost completely  was not shockingly excessive. My view is to the contrary, see Blancher v. Metropolitan Dade County, 436 So.2d 1077 (Fla. 3d DCA 1983), and I would therefore order a new trial on this issue as well.
NOTES
[1] Plaintiffs' complaint alleged that Liberty Mutual had violated subsection (i)3a, c, and d of section 626.9541(i) which defines the following insurance company practices as unfair:

(i) Unfair claim settlement practices. 
... .
a. Failing to adopt and implement standards for the proper investigation of claims;
... .
c. Failing to acknowledge and act promptly upon communications with respect to claims;
d. Denying claims without conducting reasonable investigations based upon available information.
[2] As explained in United Guar. Residential Ins. Co. of Iowa v. Alliance Mortgage Co., 644 F. Supp. 339 (M.D.Fla. 1986): "[B]ecause the insurer has the right to completely control the defense and acts as attorney-in-fact on behalf of the insured, a duty of good faith arises out of the insurer-insured relationship." Id. at 341 n. 3 (citing Baxter v. Royal Indem. Co., 285 So.2d 652 (Fla. 1st DCA 1973), cert. discharged, 317 So.2d 725 (Fla. 1975)).
[3] The rationale underlying these decisions is that the insurer and the insured (first-party claimant), as debtor and creditor, stand at arm's length with respect to claims arising out of the insurance contract. In other words, in such cases, the insurer owes no fiduciary duty to the insured as he would in the case of a third-party claim made against the insured. Baxter, 285 So.2d at 657.
[4] A cause of action based on a breach of this duty of good faith and fair dealing has been described as a "tortious breach of contract." See generally, 16A Appleman, Insurance Law and Practice, § 8877.25 (1981).
[5] Because of the status of the case as presented on appeal, we do not address the issue of whether an injured third party can bring suit against an insurer under the statute after having reached a settlement with the insured defendants. But see Moradi-Shalal v. Fireman's Fund Ins. Cos., 46 Cal.3d 287, 250 Cal. Rptr. 116, 758 P.2d 58 (1988) (disallowing such post-settlement litigation).