267 So.2d 73 (1972)
Constance Ann Hollis SACKS, Petitioner,
v.
Robert SACKS, Respondent.
No. 41877.
Supreme Court of Florida.
September 20, 1972.
*74 Albert L. Weintraub, of Weintraub & Weintraub, Miami, for petitioner.
Neil Flaxman, of Wertheim & Flaxman, Miami, for respondent.
ADKINS, Justice.
We have for review by petition for writ of certiorari, a decision of the District *75 Court of Appeal, Third District. Sacks v. Sacks, 254 So.2d 572 (Fla.App.3d, 1971).
This cause arose when the respondent, Robert Sacks, instituted divorce proceedings against petitioner, Constance Ann Hollis Sacks, who counterclaimed for child support and maintenance. The Circuit Court granted the divorce, declared Robert Sacks to be the father and ordered him to pay child support. The District Court of Appeal, Third District, reversed.
Constance Sacks was originally married in Orlando to one Hollis on May 7, 1964. This marriage did not last and the parties separated in April 1965. Shortly thereafter, petitioner and respondent began living together. Hollis returned to his home state of Mississippi and started divorce proceedings. On September 17, 1966, a child, a daughter, was born to Constance and Robert Sacks. Not only does the birth certificate name respondent as the father,' but also, he has acknowledged his fatherhood at all times and claimed the advantages of fatherhood. Finally, on April 11, 1967, the Mississippi Court granted Hollis a divorce.
Constance, Robert and the child continued living together and a common-law marriage was effected on the date the Hollis' divorce was granted. Florida at that time recognized common-law marriages. See Fla. Stat. § 741.211, F.S.A., abolishing common-law marriages entered into after January 1, 1968. The parties separated in March 1968. Thereafter, respondent sporadically contributed support to the petitioner and his daughter.
As noted above, the District Court of Appeal, Third District, reversed the Circuit Court. They did so on the basis of Kennelly v. Davis, 221 So.2d 415 (Fla. 1969). This was a paternity action brought under Fla. Stat. § 742.011, F.S.A., wherein a woman gave birth to a child conceived in, but born outside of, wedlock. The evidence tended to
"[E]stablish a strong suspicion that Davis was the father of the appellant's child." (p. 416)
Davis, the putative father did not admit his fatherhood, nor did he marry the child's mother.
On these facts, we stated:
"The study of the cases and the statute leads us to conclude that Section 742.011, Fla. Stat., F.S.A., does not permit a woman to have her child declared illegitimate and thus receive support for said child from its putative father if she was married to another person at the time of conception." (p. 416)
To apply this general rule to the unique factual situation in the case sub judice is improper. In the first place, this is not a paternity action. The respondent is the natural father and admits it. Secondly, the respondent married petitioner.
Where, as in the instant case, a general principle of law is applied to a case, although not applicable to the particular facts of that case, conflict is created. In McBurnette v. Playground Equipment Corp., 137 So.2d 563 (Fla. 1962), we stated:
"We have, therefore, assumed jurisdiction upon the ground that the decision in this case creates a conflict by expressly accepting an earlier decision of this Court as controlling precedent in a situation materially at variance with the case relied on." (p. 565)
See also Pinkerton-Hays Lumber Company v. Pope, 127 So.2d 441 (Fla. 1961), and Spivey v. Battaglia, 258 So.2d 815 (Fla. 1972). On this basis, we have jurisdiction. Fla. Const., art. V, § 4(2), F.S.A.
The District Court of Appeal, Third District, allowed the question of legitimacy to obscure the true issue before the Court; that is, the child. The child's welfare is paramount. Too often this is forgotten. See, The Florida Bastardy Act  A Law in Need of Change, by Michelle Holtzman Garbis, 24 U. of Miami Law Review 713 (Summer 1970). We find that the Circuit Court properly answered this question by declaring the respondent to be *76 the father and awarding child support. Without a showing of an abuse of discretion, the Circuit Court's decision must stand. Waller v. Waller, 212 So.2d 352 (Fla.App.3d, 1968).
It should be noted that we do not consider the child to be illegitimate. The respondent's actions with respect to the child conclusively show that he not only treated the child as his, but also admitted that he is the child's father. He paid all hospital bills at the time the child was born. Admittedly, this occurred prior to the effective date of the mother's divorce. However, petitioner and respondent had been living together as man and wife since the petitioner separated from her husband well before the child was conceived. The common-law marriage became effective upon the date the divorce decree was rendered. Respondent supported the mother and child prior to the divorce and continued to do so after the divorce.
In addition, the respondent claimed the benefits of this relationship on several occasions. He claimed the child as a deduction on his income tax returns, and obtained a draft deferment on the basis of being a married man and father of a dependent child. He held the child out to all the world as his. As noted above, even the birth certificate names the respondent as the father. Furthermore, during the Circuit Court proceedings, he again acknowledged his fatherhood. Under the same or similar facts, no court in this state would deny the right of a child to inherit from a man who behaved towards a child as respondent behaved towards this child.
In the instant case, the only thing respondent did not do was to legally adopt the child. Fortunately, however, the Legislature has filled this gap. Fla. Stat. § 742.091, F.S.A., Marriage of Parents, provides in pertinent part as follows:
"If the mother of any bastard child and the reputed father shall at any time after its birth intermarry, the child shall in all respects be deemed and held legitimate."
Therefore, when the common-law marriage was effected, petitioner's and respondent's child became legitimate for all purposes.
The courts of this State have created a strong presumption in favor of legitimacy to protect the interests of the child when the child was either born or conceived in wedlock. Gossett v. Ullendorff, 114 Fla. 159, 154 So. 177 (1934), and Eldridge v. Eldridge, 153 Fla. 873, 16 So.2d 163 (1944). This presumption as noted above was created to protect the welfare of the child. To now utilize this same presumption to deny this child support is to destroy the very reason for its existence. The welfare of the child demands that we recognize and honor not the fiction, but the underlying purpose upon which the fiction was created. The respondent is the father; he wed the mother; he acknowledged paternity; and the law should not keep him from meeting his responsibilities to his child.
In so finding, we are aware of the decisions holding that the husband is the only person who can challenge or repudiate the legitimacy of a child born or conceived during the life of the marriage. Gossett v. Ullendorff, supra; Eldridge v. Eldridge, supra; 4 Fla.Jur., Bastards, § 7 (1969 revision). This principle is aimed toward married women seeking support from one who denies paternity, or married women seeking to prevent the husband from gaining custody of a child in divorce proceedings. However, where, as here, the natural father admits his fatherhood, both in word and deed, and then effects a marriage to the child's mother, our previous holding that the husband is the only person who can challenge the child's legitimacy is not applicable.
Therefore, the decision of the District Court of Appeal, Third District, is quashed *77 and remanded with instructions to affirm the decision of the Circuit Court.
It is so ordered.
ROBERTS, C.J., and ERVIN, BOYD and CARLTON, JJ., concur.