558 So.2d 1060 (1990)
JACK ECKERD CORPORATION, Appellant,
v.
Delores SMITH, Appellee.
No. 88-2775.
District Court of Appeal of Florida, First District.
March 9, 1990.
Rehearing Denied April 19, 1990.
*1061 Jeptha F. Barbour of Marks, Gray, Conroy & Gibbs, P.A., Jacksonville, for appellant.
S. Perry Penland, Jr., of Penland, Penland & Pafford, P.A., Jacksonville, for appellee.
CAWTHON, VICTOR M., Associate Judge.
Jack Eckerd Corporation (Eckerd) appeals a final judgment awarding Delores Smith compensatory and punitive damages in her action for false imprisonment and malicious prosecution. The only point which merits discussion is Eckerd's contention that the award of punitive damages was error. We agree that the evidence presented was legally insufficient to support an award of punitive damages and that the trial court should have directed a verdict in Eckerd's favor on this issue.
This case arises out of an alleged shoplifting incident at Eckerd. Late one evening after work, Delores Smith went to a Jacksonville Eckerd to pick up two prescriptions of medicine. She went to the pharmacy counter where she received her medicine from a clerk, Maurice Hodges, and signed a prescription log book. Because of her husband's insurance, Smith was only required to pay $1.00 on each prescription. According to Smith, she offered to pay Hodges, but was told that she needed to pay at the front of the store. She picked up a few more items and returned to the front counter. Smith testified that she laid all of her items, including the medicine in a prescription bag, on the counter. The cashier, Elizabeth Robinson, rang up the items and asked for $11.18. Smith gave Robinson $20.00 and received $8.82 in change. According to Smith, Robinson put the household items in a small bag and she put her prescription medicine in her purse. Smith attempted to leave the store and an alarm went off. A checkpoint alarm system in the store is activated by a tag on merchandise which is normally detuned and deactivated upon receipt of payment.
Smith returned to Robinson in an attempt to determine what had caused the alarm to go off. They determined that the household items were accounted for on Smith's receipt and were somewhat perplexed when the assistant manager, Alfred Lederer, joined them at the cashier's desk. At this point, Smith took the prescription bag from her purse commenting that perhaps her medicine was the problem. According to Smith, she paid Robinson $2.00 for the medicine in Lederer's presence; but Lederer disputes this, testifying that without authority, Robinson permitted Smith to pay when Lederer had gone to the back of the store to talk to Hodges.
When Lederer returned from the back of the store after talking to Maurice Hodges, he asked Smith to accompany him to his office. He began filling out a report and shortly thereafter, Officer Green arrived. Smith became upset and started crying and Officer Green testified that he didn't remember her offering any explanation of the circumstances. Based on the facts that Officer Green learned from Lederer  that appellant had been told by Hodges to return *1062 to the front of the store to pay for her medicine, that her medicine was concealed in her bag, and had not been paid for when she attempted to leave the store  Officer Green determined there was probable cause to arrest. He did not take Smith to the jail to book her, but instead gave her a notice to appear. Before Smith left, Lederer took her medicine as evidence and gave her $2.00 back.
A criminal prosecution followed. Smith's lawyer, Dave Douglas, had difficulty locating Elizabeth Robinson but eventually her deposition was taken. For trial, the assistant state attorney didn't subpoena either Robinson or Hodges, so Douglas subpoenaed them. After the jury was sworn for Smith's criminal trial, and while the jury was being given its preliminary instructions, Robinson appeared at the courtroom door and attempted to come in. There was a slight commotion at the door, noticed by both attorneys and the court. The assistant state attorney asked for a brief recess to talk to Robinson. Both attorneys stepped outside the courtroom, where the assistant state attorney confirmed that the individual at the courtroom door was Elizabeth Robinson. The assistant state attorney returned to the courtroom and nolle prossed the state's case against Smith.
Thereafter, Delores Smith and her husband filed a complaint against Eckerd alleging false imprisonment and malicious prosecution. Neither Elizabeth Robinson nor Maurice Hodges could be located to testify in this civil trial, and the trial court determined that the plaintiffs could not use their deposition testimony. At the civil trial, Officer Green testified that when he was called to Eckerd, Lederer told him that Mrs. Smith attempted to leave the store without paying for her prescriptions, the alarm went off, and he confronted her. He gave himself as a witness, but did not tell Officer Green that there were other witnesses, namely Robinson or Hodges. Officer Green was asked if he would have arrested Mrs. Smith if he had known that Elizabeth Robinson, the cashier, forgot to ring up the purchase, and that after the alarm went off, Mrs. Smith paid for the medicine, and Officer Green answered that under those circumstances, he wouldn't have arrested Mrs. Smith.
Mrs. Smith testified that after the alarm went off, she realized that Robinson had mistakenly overlooked her prescriptions. She testified:
Q. Now, the prescription comes out of your bag  I'm trying to orient you. At the time after the prescription comes out of your bag, he says, "No wonder you didn't pay for it?"
A. "No wonder, she didn't ring it up because it was in your purse."
* * * * * *
Q. Let me ask you a question, Ms. Smith. Now, does the manager in your presence ever ask Elizabeth Robinson if you put the prescriptions up on the counter, if you paid for it?
A. No, sir.
She described Lederer:
He was very calm. He didn't act nasty with me at all. He just told me to come up in his office and he got the papers and wasn't nasty or anything. He just, like he said, he did what he had to do. That's what he said to me.
Lederer testified that he didn't actually see Robinson ringing up Smith's purchases or even become aware of Smith until after the alarm sounded and Smith returned to the cashier. He had no recollection of asking Ms. Robinson if she had forgotten to detune and deactivate the tag on Smith's prescriptions. He had no knowledge of whether or not Smith put her prescription on the counter for Robinson to ring up. He did not remember talking to Robinson or Smith[1] and made up his mind to call the police after Smith removed the unpaid-for prescription from her purse where they had been concealed and after talking to Hodges and learning that Smith had been told to pay for the prescriptions at the front counter. Though he admitted that it would have been a good practice to talk to the cashier and suspect, he commented that they never offered any explanation to him *1063 of the incident. Neither of them told him about a potential mistake, Mrs. Smith's only comment being "this must be it" when she removed the prescription bag from her purse. He testified that he gave Officer Green all of the information he knew and that he called the police so that the police could determine if Smith should be arrested for shoplifting. He testified that he never called the state attorney's office or put pressure on the state attorney's office to continue the shoplifting prosecution against Smith. He followed Eckerd's policy to call the police and report the incident because there had been "concealment" of the prescription in Smith's purse.
The jury returned a verdict finding that Eckerd had maliciously prosecuted Delores Smith and falsely imprisoned her. They awarded her $25,000.00 compensatory damages, but they awarded her husband, Wilbur, zero damages. They awarded punitive damages of $100,000.00 against Eckerd.
In opposition to Eckerd's motion for a directed verdict, Smith argued to the trial court that the proof of malice required to make out a cause of action for malicious prosecution is also sufficient evidence of malice to permit a jury to award punitive damages as punishment. This is not necessarily true. Legal malice, which may be implied or inferred from an absence of probable cause, must be proved in order to recover compensatory damages in a malicious prosecution action, and such proof of legal malice may be sufficient for recovery of punitive damages as well, if it encompasses a showing of moral turpitude or willful and wanton disregard of the plaintiff's rights, which presupposes the defendant's knowledge or awareness of the risk to plaintiff's rights, or evidence of excessive and reckless disregard of the plaintiff's rights.[2] Legal malice based solely upon the want of probable cause is not sufficient to support an award of punitive damages. Winn Dixie Stores, Inc. v. Gazelle, 523 So.2d 648, 650 (Fla. 1st DCA 1988); and Harris v. Lewis State Bank, 482 So.2d 1378, 1385 (Fla. 1st DCA 1986). In Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214, 223 (Fla. 1936), the court commented on the evidence necessary to support punitive damages as follows:
Turning now to the case at bar, it is evident upon the statement of the facts heretofore given that there is present in the case no such evidence of evil intent, actual or presumptive, as is necessary to sustain a recovery of punitive or exemplary damages for the particular wrong shown. On the contrary, it appears from the evidence that while the defendant has become liable to plaintiff to make compensation to her for humiliation, indignity, and mental suffering occasioned by the defendant's wrongful interference with her peaceful security of person and reputation, the wrong done was the result of an honest, but mistaken suspicion on the part of the defendant's servants that plaintiff was guilty of a theft from defendant's store. Had the defendant's servants stripped plaintiff of her clothing in an effort to find articles supposed to have been stolen, or beat her in an effort to make her confess her alleged guilt, or perpetrated some other similar atrocious and excessive act of violence toward plaintiff, the situation would have been different and a finding of malicious and wanton wrong doing might have been sustained, whether done under a mistaken view of right or not on defendant's part. But in this case the force and detention employed was no greater than would have been the case had plaintiff's guilt of theft been established. So the wrong done was such as would be occasioned in any event solely as a result of an assault, battery, and false imprisonment shown to have occurred. It is not shown to have been deliberately done on account of any actual malicious intent on the part of defendant's servants to unduly or inordinately add to plaintiff's suffering and indignity as a means of coercing her future conduct or as an instrument of revenge for past conduct.

*1064 It was therefore the duty of the court to have withdrawn from the jury at defendant's request its instruction that authorized the jury to inflict punitive or exemplary damages in addition to compensatory damages, and its refusal to do so was unauthorized... .
In this case, we find that while there was a showing of lack of probable cause sufficient to sustain a cause of action for malicious prosecution and false imprisonment and sustain an award of compensatory damages, this was unaccompanied by a showing of willful and wanton disregard of plaintiff's rights, excessive or reckless disregard of plaintiff's rights, or any other outrageous conduct sufficient to support an award of punitive damages. See Hospital Corp. of Lake Worth v. Romaguera, 511 So.2d 559, 565 (Fla. 4th DCA 1986).
Smith complains that Eckerd should have conducted a more thorough investigation before calling a law enforcement officer and that the failure to do so justifies the award of punitive damages. It is our view, however, that the brief investigation which established that Smith was leaving a protected area with concealed merchandise which had activated a control device and the prompt call to law enforcement together with the turning over of the investigation, without recommendation or rancor, to Officer Green, someone trained and authorized to conduct it, was an honest albeit mistaken effort to comply with the spirit of section 812.015(3), Florida Statutes (1985), which gives a merchant immunity from prosecution for false imprisonment if he acts with probable cause and calls law enforcement immediately after taking a shoplifting suspect into custody.
There was no evidence that Lederer was deliberately untruthful to Officer Green or that he acted with full knowledge of all the exculpating facts but recklessly or deliberately disregarded them. Compare Cardenas v. Miami-Dade Yellow Cab Co., 538 So.2d 491, 494 (Fla. 3d DCA 1989) (evidence sufficient to go to jury on question of punitive damages where the taxi driver was aware that plaintiffs had not stolen pool chair but had stroller, which was not property of condominium complex, but nevertheless taxi driver took plaintiffs back to the complex against their will); K-Mart Corp. v. Sellars, 387 So.2d 552 (Fla. 1st DCA 1980) (assistant manager knew inventories were inaccurate and yet participated in detention of deliveryman for petit theft). The evidence in this case is not unlike the evidence in Gazelle, 523 So.2d at 651, which this court held was not sufficient to support an award of punitive damages. As in Gazelle, the evidence shows the initiation of prosecution without sufficient investigation or probable cause, but does not demonstrate willful and wanton misconduct.
AFFIRMED in part, and REVERSED in part, and REMANDED for further proceedings consistent with this opinion.
MINER, J., concurs.
ZEHMER, J., concurs and dissents with written opinion.
ZEHMER, Judge (concurring and dissenting).
I concur in affirming the appealed judgment on the points not discussed in the majority opinion. I respectfully dissent, however, from the decision to reverse the award of punitive damages.
My disagreement with the majority opinion centers on the conduct of the drug store's assistant manager, Alfred Lederer, proven by the evidence submitted to the jury. Drawing all inferences from that evidence most favorably for the plaintiff as the prevailing party, as we must do on this appeal, it is clear to me that this evidence would support findings that Lederer made what amounted to fraudulent misrepresentations to Officer Green which caused the officer to arrest the plaintiff for theft. Lederer initiated the call to the law enforcement authorities and made statements to Officer Green concerning what happened without having investigated the facts. He had not determined whether the store clerk, Robinson, had simply overlooked the medicine when she totaled the purchases, as the plaintiff contends. Regardless of what Lederer stated in his testimony, the jury could rightfully have found that Lederer, *1065 without having even spoken to Robinson to determine whether plaintiff had in fact presented the medicine to her for payment, told Officer Green that the plaintiff had deliberately concealed the medicine in her bag and attempted to leave the store without paying for it.
Making a statement that is false when one does not have sufficient information to know whether the statement is either true or false amounts to a knowing misrepresentation that rises to the level of fraudulent conduct. Joiner v. McCullers, 158 Fla. 562, 28 So.2d 823 (1947); Saunders Leasing System, Inc. v. Gulf Cent. Distribution Center, Inc., 513 So.2d 1303 (Fla. 2d DCA 1987), review denied, 520 So.2d 584 (Fla. 1988); Miller v. Sullivan, 475 So.2d 1010 (Fla. 1st DCA 1985). This is so because a person is assumed to know whether he has insufficient knowledge of the facts to assert the statement as true. Such fraudulent conduct is sufficient to make out a jury issue on punitive damages. Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214 (1936); Walsh v. Alfidi, 448 So.2d 1084 (Fla. 1st DCA), reh'g denied, (1984). Similarly, false accusations causing one's arrest that are made without reasonable investigation to determine the factual basis for such accusations will support submitting the issue of punitive damages to the jury. For example, in Winn-Dixie Stores, Inc., v. Robinson, 472 So.2d 722 (Fla. 1985), Robinson had purchased goods at a Winn-Dixie store and left them in his car. The next day he went again to the Winn-Dixie store and made additional purchases. An employee of Winn-Dixie assisting Robinson in bringing his new purchases to the car observed the other goods in the back of the car and concluded that the goods had been shoplifted. When Robinson went back in the store to make additional purchases, he was placed under arrest for theft and the goods were retrieved from the car and replaced on the store shelves. The charge of theft brought against him was later dropped. At the trial the jury found Winn-Dixie guilty on charges of malicious prosecution, false imprisonment, and conversion, and awarded compensatory damages in the amount of $200,000 and punitive damages in the amount of $750,000. The trial judge thereafter granted a directed verdict for Winn-Dixie on punitive damages, and alternatively in the event of reversal of this ruling on appeal, granted a remittitur of the punitive damages award to $500,000. The Fourth District Court of Appeal reversed the directed verdict on punitive damages, 447 So.2d 1003, and the supreme court, two justices dissenting, affirmed the sufficiency of the evidence to support the punitive damages award. The supreme court also let the remittitur stand. I believe the instant case is governed by Robinson.
The majority opinion relies primarily on the supreme court decision in Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214 (1936), as authority for taking the punitive damages issue away from the jury in the instant case. The language from that decision quoted in the majority opinion notwithstanding, there is a critical difference in the facts in Archer that completely distinguishes it from the instant case and Robinson. In Archer, Mary Archer had been shopping at Setzer's grocery and brought the bag containing her purchases with her to the Winn & Lovett store. As she was leaving Winn & Lovett after making additional purchases, a clerk asked her to return to have the purchases checked. The clerk suspected Mary Archer had taken goods that she had not paid for. Removing her to an office in the store, the clerk called the police, and the policeman and the store employees questioned Ms. Archer about the goods. When she explained that she had purchased some of the goods at Setzer's, they confirmed this fact with that store and the Winn & Lovett employees let the matter drop. The supreme court held the evidence sufficient to make out a case for compensatory damages for false imprisonment and assault and battery, but reversed the punitive damages award for the reasons stated in the majority's quote from Archer.
The distinction between Archer and Robinson lies in the fact that in the former, Ms. Archer was merely detained a short while without arrest to permit the store *1066 employees and the police to reasonably investigate the matter, while in Robinson the Winn-Dixie employees summoned the authorities and had Robinson arrested as he returned to the store without making a reasonable investigation to determine whether he had taken the goods without paying for them. The key distinguishing factor supporting the punitive damage award, therefore, was the defendant's failure to make a reasonable investigation before causing the patron's arrest. It is this factor that appellee argues in the instant case warrants the submission of the punitive issue to the jury.
Turning to the facts in this case, Lederer initiated this whole episode without making any inquiry of his clerk, who was the only person in the store other than the plaintiff having actual knowledge of what happened. Lederer made no investigation whatsoever before summoning Officer Green to the store. Neither Lederer nor Officer Green interviewed the clerk before placing plaintiff under arrest. On this evidence, the jury could well have concluded that Lederer, as the defendant's agent in charge, was not concerned whatsoever for the plaintiff's rights under the circumstances but rather acted with willful and wanton disregard of plaintiff's rights, that is, he acted with full knowledge that the officer would rely on his statements that plaintiff had concealed the medicine in her bag without paying for it, that he had not investigated the circumstances of this purchase by talking with his clerk, and that as a result plaintiff would be arrested on a charge of theft. Despite appellee's argument, this proof goes well beyond establishing the lack of probable cause essential to proving a charge of malicious prosecution. It would support a finding by the jury that the defendant acted "with an entire want of care" or attention to the plaintiff from which "the jury could have imputed malice to the defendant." Griffith v. Shamrock Village, Inc., 94 So.2d 854 (Fla. 1957). Cf. Harris v. Lewis State Bank, 482 So.2d 1378 (Fla. 1st DCA 1986).[3] The law remains well established that where the evidence will support a finding that the defendant acted in willful and wanton disregard of plaintiff's rights and the consequences to plaintiff, it is for the jury, not the court, to determine whether punitive damages should be awarded. St. Regis Paper Co. v. Watson, 428 So.2d 243 (Fla. 1983); Griffith v. Shamrock Village, Inc., supra; Dr. P. Phillips & Sons, Inc. v. Kilgore, 152 Fla. 578, 12 So.2d 465 (Fla. 1943).[4]
The court below did not err in allowing the jury to decide whether the defendant's conduct under the circumstances was sufficiently wrongful to warrant the imposition of punitive damages. The facts in this case are no less egregious than the facts in Winn-Dixie Stores, Inc., v. Robinson, 472 So.2d 722 (Fla. 1985), and Griffith v. Shamrock Village, Inc., 94 So.2d 854 (Fla. 1957). The majority ruling in this case that the lack of investigation by the defendant was "an honest albeit mistaken effort" leaves this decision in conflict with the supreme court's decision in Robinson. It is error to take the punitive damage issue from the jury. I would affirm the judgment in all respects.
NOTES
[1] Smith testified that he did talk to them.
[2] Of course, actual malice or fraud are proper grounds for the recovery of punitive damages as well. Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214 (1936).
[3] In Harris, this court held:

Appellant realleged separate acts of the bank in each of her counts. If the allegations are taken as true, as they must on review of a motion to dismiss, and the fact that the bank employees' knowledge can be imputed to the bank is taken into account, the complaint sufficiently alleges a willful disregard by the bank of the consequences to appellant of its misrepresentations and failures to disclose pertinent information to appellant, John Lewis, the sheriff's investigator, and the prosecutor. Therefore, the request for punitive damages in each count should not have been dismissed.
Harris, at 1385. (Footnotes omitted).
[4] None of the cited cases has been receded from in any way by the Florida Supreme Court.