BARKETT, Justice,
dissenting.
While the district court below correctly stated the rule of law regarding punitive damages, see Jack Eckerd Corp. v. Smith, 558 So.2d 1060, 1064 (Fla. 1st DCA 1990), it misapplied the law to deny punitive damages, and created conflict with Winn-Dixie Stores, Inc. v. Robinson, 472 So.2d 722 (Fla.1985), a similar case where on less egregious facts the Court approved a punitive damages award. I also would find conflict with Griffith v. Shamrock Village, Inc., 94 So.2d 854, 858 (Fla.1957), where in a different context the Court again said that facts no more egregious than those here were sufficient to present a jury issue as to punitive damages.[1] Accordingly, I believe this Court should accept jurisdiction and quash the decision below.
Despite some loose language in prior cases, the Court has consistently maintained the rule that no matter what label is used to characterize tortious conduct,[2] punitive damages may be awarded only when the tortious conduct rises to the level of legal malice, willful and wanton behavior, moral turpitude, outrageousness, or reckless indifference for the rights of others.[3] Here ample evidence demonstrates that the conduct of Eckerd Corporation, through its store’s assistant manager, Alfred Lederer, rose to this level when the assistant manager recklessly disregarded Smith’s rights.
The problem arose when Smith went to an Eckerd drug store in Jacksonville, Florida, for prescription medication. Maurice Hodges, a clerk at the rear of the store, gave Smith her prescriptions. Smith attempted to pay Hodges the two-dollar charge, but he told her to pay at the front of the store.
Smith picked up various household items on the way to the register. When she reached the front counter she placed all of her items, including the prescriptions, on the counter. The cashier, Elizabeth Robinson, rang up the sale. While Robinson placed the household items in a paper bag, Smith put the prescriptions in her purse. She picked up the bag and attempted to exit the store when the anti-shoplifting check point alarm system was activated.
*1323 Upon hearing the alarm, Smith immediately returned to Robinson’s counter to inquire about the alarm, and assistant manager Lederer joined the discussion. During the conversation, Smith removed the prescriptions from her purse and asked if the prescriptions had set off the alarm. Lederer examined Smith’s receipt and determined that Robinson had not rung up the prescriptions. Lederer checked with Hodges, who told him that Smith had tried to pay for the prescriptions, but he had directed her to the front register instead.
Smith then paid the two dollars and got a receipt. After she paid, Lederer took back the prescriptions and returned her money, explaining that he needed the prescriptions for evidence.
Despite all of the information Lederer had about the incident, he chose to tell the police only that Smith had walked out of the store without paying for the prescription. He left out the fact that she had attempted to pay in the pharmacy department but the clerk directed her to pay at the front register; that she immediately and voluntarily returned to Robinson’s counter to help Eckerd employees figure out why the alarm went off; that Smith subsequently paid for the medication; and that he, Lederer, took the prescriptions back from Smith after he knew she had paid.
Based on Lederer’s scanty account, the authorities charged Smith with petit theft, to which she pled not guilty. However, when the prosecutor became aware that Robinson was available to testify for Smith, the prosecutor nol pressed the charges. Smith then sued for false imprisonment and malicious prosecution. At the conclusion of her civil trial, the court properly instructed the jury on the legal standard for punitive damages, and the jury awarded Smith $100,000 in punitive damages.
The clear rule set by this Court is that an appellate court may not reverse a punitive damages award as a matter of law unless “under no view of the evidence presented here would it be proper to impose punitive damages.” White Constr. Co., Inc. v. Dupont, 455 So.2d 1026, 1029 (Fla.1984) (emphasis supplied). The district court misapplied the law on these facts. That misapplication of law also produced a result directly contrary to another shoplifting-related decision in Winn-Dixie Stores, Inc. v. Robinson, 472 So.2d 722 (Fla.1985), where upon substantially the same facts— and even less egregious conduct — this Court approved a punitive damages award.
The tortious conduct in Robinson arose when, after making some purchases at a Winn-Dixie store, a Winn-Dixie employee helped Robinson to his vehicle. The employee saw goods in the back of Robinson’s car and concluded that those goods had been shoplifted. The employee consulted with the assistant manager of the store, who then called the authorities. When Robinson reentered the store to make additional purchases he was placed under arrest, and Winn-Dixie employees removed the merchandise from his car and returned it to the shelves for resale. Robinson was charged with petit theft. However, it turned out that Robinson had purchased the subject goods on the previous day. Consequently, the petit theft charge was dropped, and Robinson sued Winn-Dixie for false imprisonment, malicious prosecution, and conversion. The jury awarded him $200,000 in compensatory damages and $750,000 in punitive damages. The punitive damages award was approved by both the district court and this Court. Winn-Dixie Stores, Inc. v. Robinson, 472 So.2d at 722, approving in part, disapproving in part, 447 So.2d 1003 (Fla. 4th DCA 1984).
In both Smith and Robinson, store employees conducted little or no investigation and falsely accused individuals of shoplifting items that had been bought and paid for. In both cases the respective stores took back the allegedly stolen items, even though they had been paid for, and then initiated false prosecutions, only to see the *1324 charges dropped when the truth surfaced. That conduct was egregious enough in the Court’s eyes to warrant punitive damages in Robinson, yet in the instant case, Lederer’s acts of commission or omission, as described above, were far more reprehensible than Winn-Dixie’s conduct and even more strongly support punitive damages.
Another less egregious example of facts supporting punitive damages is Griffith v. Shamrock Village, Inc., 94 So.2d 854, 858 (Fla.1957). In that case, Griffith was supposed to be the best man at his brother’s wedding. His brother called Griffith at his rental unit in Shamrock Village two nights before the wedding to tell him that the wedding had been moved to another city. However, personnel at Shamrock Village erroneously told Griffith’s brother that Griffith had checked out without a forwarding address, and they left no message in Griffith’s box. Subsequently, Griffith went to the wrong city and missed the wedding. This Court held that the trial court erred when it dismissed the punitive damages claim before giving the case to the jury. I believe that if this Court could have approved a punitive damages award in Griffith, the district court should have done so in Smith.
In conclusion, I am convinced that the district court misapplied the law to the facts of this case and reached a decision that conflicts with other decisions of this Court. I would accept jurisdiction and quash the decision below.
SHAW, C.J., and KOGAN, J., concur.

. This Court has conflict jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution when a district court applies a rule to produce a decision conflicting with that reached in another decision involving substantially the same controlling facts. Mancini v. State, 312 So.2d 732, 733 (Fla.1975); Adams v. Seaboard Coast Line R.R. Co., 296 So.2d 1, 4-5 (Fla.1974); Nielsen v. City of Sarasota, 117 So.2d 731, 734 (Fla.1960); England, Hunter & Williams, Constitutional Jurisdiction of the Supreme Court of Florida: 1980 Reform, 32 U.Fla.L.Rev. 147, 189 (1980); see also Sacks v. Sacks, 267 So.2d 73, 75 (Fla. 1972) (misapplication of law created conflict where district court relied on inapplicable rule of law).

. As Justice Shaw keenly observed in Como Oil Co., Inc. v. O'Loughlin, 466 So.2d 1061, 1062 (Fla.1985) (Shaw, J., concurring in part, dissenting in part), this Court must look at the evidence and the decision regarding punitive damages, rather than whether the district court used the correct "magic words” to describe the conduct at issue.

.See First Interstate Dev. Corp. v. Ablanedo, 511 So.2d 536 (Fla. 1987); Chrysler Corp. v. Wolmer, 499 So.2d 823 (Fla.1986); American Cyanamid Co. v. Roy, 498 So.2d 859, 861 (Fla.1986); Como Oil Co., Inc. v. O’Loughlin, 466 So.2d 1061 (Fla. 1985); White Constr. Co., Inc. v. Dupont, 455 So.2d 1026 (Fla. 1984); Southern Bell Tel. & Tel. Co. v. Hanft, 436 So.2d 40 (Fla.1983); Adams v. Whitfield, 290 So.2d 49, 51 (Fla. 1974); Carra-way v. Revell, 116 So.2d 16, 20 (Fla.1959); Griffith v. Shamrock Village, Inc., 94 So.2d 854, 858 (Fla.1957); Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214, 221 (1936).