785 So.2d 1273 (2001)
Wade BARKER, Petitioner,
v.
Brenda BARKER, Respondent.
No. 5D01-358.
District Court of Appeal of Florida, Fifth District.
June 8, 2001.
Madonna H. Whittaker, Altamonte Springs, for Petitioner.
No Appearance for Respondent.
PER CURIAM.
Wade Barker seeks certiorari review of an order compelling him to submit to paternity testing. We grant the petition and quash the order.
Wade and Brenda Barker's marriage was dissolved in 1991, but their intimacy continued until the fall of 1992 and on July 6, 1993, Brenda gave birth to K.A.B. A 1998 court order gave temporary primary residential responsibility of K.A.B. to Wade. In June, 2000, Wade sought modification of custody, support and a determination that he was the lawful father pursuant to Chapter 742, Florida Statutes (2000). Brenda responded by seeking custody *1274 and asserting abuse and neglect of the child by Wade. She further questioned paternity without actually alleging that a third party was the biological father. This was the first time that Brenda had questioned Wade's belief that he was the father.
The trial court then ordered both parties and the child to submit to blood tests to determine the probability of paternity and Wade filed the instant petition alleging that the trial court departed from the essential requirements of the law by ordering the tests and failing to consider K.A.B.'s best interests.
The facts of this case are similar to Benac v. Bree, 590 So.2d 536 (Fla. 2d DCA 1991) where the putative father acknowledged parenthood and had furnished support for the child. The mother defended against his request for custody by claiming that another individual was the biological father.[1] The second district quashed the trial court's order to submit to a paternity test stating that the test ordered was premature "because the circuit court has not yet received any evidence as to what the child's interest may be." Id. at 538. The best interest evaluation was supposed to take place before the trial court considered the putative father's other argument that the mother should be estopped from contradicting her prior acknowledgment of his paternity. See also T.D.D. v. M.J.D.D., 453 So.2d 856 (Fla. 4th DCA 1984); Privette v. H.R.S., 585 So.2d 364 (Fla. 2d DCA 1991), approved, 617 So.2d 305 (Fla.1993).
We grant the petition based on Benac, issue the writ and quash the order compelling the paternity test.
PETITION GRANTED; ORDER QUASHED.
PETERSON and SAWAYA, JJ., concur.
COBB, J., concurs specially, with opinion.
COBB, J., concurring specially.
I concur in the majority opinion and write to make two observations: (1) for a variety of reasons, Brenda Barker should be equitably estopped to affirmatively[1] challenge Wade Barker's parentage of K.B. in respect to the custody and support issues pending before the trial court. See Department of Health and Rehabilitative Services v. Privette, 617 So.2d 305, 307 n. 3 (Fla.1993). For example, she has routinely recognized and stated under oath that K.B. is the natural child of Wade Barker; she has accepted financial support for K.B. from Barker over a period of years; and she concurred with the signing of K.B.'s birth certificate by Wade Barker as the child's father and agreed that the child's surname should be Barker. Therefore, upon remand, Wade Barker should be able to preclude an HLA test simply by dismissing his Chapter 742 action. The litigation could then proceed on the issues of custody and support of K.B. between these two adversarial parents, as it has since at least 1998. Such litigation would be binding on Wade Barker and Brenda Barker although leaving unaffected any future actions by third parties or by K.B., and depriving Wade Barker of any formal court adjudication as to his parental status. (2) Assuming a "best interests" evaluation hearing is held to determine the advisability *1275 of having HLA testing to show whether or not Wade Barker is the biological father of K.B., the latter must be represented at said hearing by a responsible guardian ad litem, who should furnish the court a recommendation as to such testing. See Privette at 307. In making that decision the trial court should be aware that Florida law presumes that it is in the best interest of K.B. to have a legal, as opposed to merely a biological, father. See Sacks v. Sacks, 267 So.2d 73 (Fla.1972).
NOTES
[1] The claim was stronger in Benac than here where Brenda only questions whether Wade is K.A.B.'s father.
[1] See Payne v. Nicholson, 100 Fla. 1459, 131 So. 324 (Fla.1930), wherein the Florida Supreme Court discusses the "sword-shield" principle as it relates to statutes of limitation, analogous to the laches factor present in the instant case.